UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JULIO G.B. (A-Number: 204-472-910),

Petitioner,

v.

WARDEN, GOLDEN STATE ANNEX DETENTION FACILITY, *et al.*,

Respondents.

Case No. 1:26-cv-1610-KES-JDP

ORDER; FINDINGS AND RECOMMENDATIONS

In approximately 1997, petitioner Julio G.B., a citizen of Mexico, entered the United States without permission as a toddler with his family. Petitioner received deferred action status under the Deferred Action for Childhood Arrivals ("DACA") program. In May 2025, immigration authorities detained petitioner. Petitioner, proceeding with counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2241 for his release. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

As a toddler, petitioner entered the United States without permission with his family. *See* ECF No. 17 at 5. Petitioner grew up in the United States, speaking English, studying in a public school, and working with an employment authorization. *Id.* Approximately fifteen years ago, petitioner began caring for his infant niece after her father (his brother) died. *Id.* at 6.

In 2014, the Department of Homeland Security ("DHS") granted his application for

deferred action under DACA. ECF No. 17 at 4. Petitioner regularly updated his DACA status, which was still valid when he was detained by immigration authorities in May 2025. *Id.* That detention occurred after petitioner was arrested by local police on a charge of driving under the influence, which remains pending. *Id.*

On January 20, 2026, the immigration court held a bond hearing—ordered by the undersigned in a related habeas action—and denied release on the basis that petitioner is a "danger" and a "flight risk." *Id.*, ECF No. 16; ECF No. 6-1 at 4-8. On March 18, 2026, the immigration court again held a bond hearing on petitioner's motion for custody redetermination and denied release on the basis that it lacked jurisdiction over petitioner's request for custody redetermination. ECF No. 22-1. The immigration court noted that it had heard petitioner's prior requests for custody redetermination on July 25, 2025, September 8, 2025, December 3, 2025, and January 15, 2026, and that the "[c]ourt maintains, as explained above, that this [c]ourt lacks jurisdiction over [petitioner's] request for custody redetermination." *Id.*

While petitioner was in immigration custody, immigration authorities mailed him a notice of intent to terminate his DACA status on March 13, 2026. ECF No. 22 at 4. On March 27, 2026, the immigration judge ordered petitioner removed from the United States. ECF No. 22-2. Petitioner appealed that determination to the Board of Immigration Appeals ("BIA") on April 20, 2026, ECF No. 22-3, and accordingly, his removal order is not yet final. On May 11, 2026, DHS issued petitioner a DACA termination notice. ECF No. 25.

**Procedural History**

On November 10, 2025, petitioner filed a pro se petition for writ of habeas corpus, arguing that his detention violated the Immigration and Nationality Act, because he was mandatorily detained by ICE under 8 U.S.C. § 1225(b) instead of § 1226(a), which would have afforded him a bond hearing in immigration court.[1] *Garcia Banderas v. Golden State Annex*, No. 1:25-cv-1529-JDP, ECF No. 1 (hereinafter "*G.B. I*"). On January 13, 2026, I granted the petition

[1] Both parties consented to magistrate judge jurisdiction over the merits of the petition. *G.B. I*, ECF Nos. 12 & 13. In that matter, I noted that the pro se petition was "somewhat difficult to understand and raises numerous arguments in favor of release, or in the alternative, a bond hearing." *Id.*, ECF No. 14 at 1.

and ordered the government to provide a bond hearing within seven days. *G.B. I.*, ECF No. 14 at 7-8. In granting the bond hearing, I explicitly did not resolve which party would bear the burden of proof. *Id.* at 7. I held that "petitioner's potential detention is governed by section 1226 and therefore that he is entitled to a bond hearing." *Id.* In so deciding, I found it "unnecessary to weigh, as the government invite[d] the court to do, which party should carry the burden of persuasion at such a hearing." *Id.*

On January 23, 2026, respondents filed a status report notifying the court that the bond hearing was held, and that release was denied by the immigration judge, who found petitioner to be a "danger" and a "flight risk."[2] *G.B. I*, ECF No. 16 and ECF No. 6-1 at 4-8. At this bond hearing, the immigration judge placed the burden of proof on petitioner. *G.B. I*, ECF No. 16-1 at 6.

On February 25, 2026, petitioner, though counsel, filed a petition for writ of habeas corpus and a motion for a temporary restraining order in the instant matter, arguing, in relevant part, that his detention violates substantive and procedural due process and applicable regulations. ECF Nos. 1 & 4. The court denied the motion for temporary restraining order and referred the matter to the assigned magistrate judge. ECF No. 13.

On April 1, 2026, petitioner filed a first amended petition for writ of habeas corpus.[3] ECF No. 17. Respondents filed an answer on April 27, 2026, ECF No. 22, and petitioner has replied, ECF No. 23. On August 7, 2026, the court related this matter to the previous matter, No. 1:25-cv-1529-JDP, and reassigned it to me. ECF No. 30.

## Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."

[2] Petitioner, through counsel, has moved to enforce the court's judgment in the prior matter. *G.B. I.*, ECF No. 18.

[3] Still pending is respondents' motion to dismiss the original petition. ECF No. 7. I will deny this motion as moot in light of the amended petition.

*Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his detention violates substantive and procedural due process.[4] ECF No. 17 at 15-16, 20-21. Respondents argue that petitioner's claims "could have been raised in his first habeas petition" in *G.B. I*, E.D. Cal. No. 1:25-cv-1529-JDP, and argue that this matter must be dismissed as "abuse of the writ."[5] ECF No. 22 at 1. *Id.*at 2.

I first address the abuse of the writ argument. Petitioner's first habeas petition, in *G.B. I*,

---

[4] Petitioner also claims that his detention violates the Administrative Procedure Act and the Fourth Amendment. ECF No. 17 at 17-18, 21-22. Because I recommend that the petition be granted on due process grounds, I do not consider these claims.

[5] Respondents also argue that petitioner has had multiple post-deprivation bond hearings in immigration court, and that this matter should be dismissed for failure to exhaust his remedies by appealing those determinations. ECF No. 22 at 2. Respondents' claim that petitioner "has had five post-deprivation custody reviews" is misleading, and government counsel is cautioned regarding this issue.

Petitioner requested custody redetermination hearings in immigration court, but—except for the January 20, 2026, hearing conducted in compliance with this court's order—"petitioner was never afforded an actual bond hearing at which a neutral arbiter could weigh his specific circumstances and determine whether release on bond was appropriate." *See G.B. I*, ECF No. 14 at 2 (rejecting government's assertion in first habeas case that petitioner received bond hearings). On March 18, 2026, when the immigration court again found that it lacked jurisdiction, it noted that it had heard petitioner's prior requests for custody redetermination on July 25, 2025, September 8, 2025, December 3, 2025, and January 15, 2026, and the "[c]ourt maintains, as explained above, that this [c]ourt lacks jurisdiction over [petitioner's] request for custody redetermination" because he is detained under section 1225(b). ECF No. 22-1. It is of particular concern to this court that the March 2026 immigration judge finding of "lack of jurisdiction" occurred after this court found in *G.B. I* that petitioner's detention is governed by section 1226(a), not section 1225(b). *G.B. I*, ECF No. 14 at 7. Since the immigration court has held that it lacks jurisdiction, any exhaustion requirement is waived as futile because the BIA would similarly find that it lacks jurisdiction to hear petitioner's appeal. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 228 (BIA 2025). Alternatively, exhaustion is futile because the BIA lacks authority to consider constitutional issues. *See In re Fuentes-Campos*, 21 1. & N. Dec. 905, 912 (BIA 1997) ("It is well settled that we lack jurisdiction to rule on the constitutionality of the Act and the

was filed in pro se, was "somewhat difficult to understand," and only raised a statutory attack on his immigration detention without a bond hearing. *G.B. I*, ECF 14 at 1. I found that petitioner's detention under 8 U.S.C. § 1225(b) was in violation of the INA, and that he was "entitled to a bond hearing." *Id.* at 7.

The question is whether petitioner's failure to include his due process and *Accardi*[6] claims in his original pro se petition constitutes "abuse of the writ." It does not. "Generally, the abuse of the writ doctrine 'forbids the reconsideration of claims that were or could have been raised in a prior habeas petition.'" *Petrocelli v. Angelone*, 248 F.3d 877, 884 (9th Cir. 2001) (quoting *Calderon v. United States Dist. Ct.*, 163 F.3d 530, 538 (9th Cir. 1998) (en banc)). The Court of Appeals has recognized that the common law doctrine of the abuse of the writ doctrine may apply to successive habeas petitions challenging immigration detention filed pursuant to section 2241. *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011) ("Under the abuse of the writ doctrine, a successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain that claim.").

In *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991), the Supreme Court held that when a prisoner files a second or subsequent habeas petition, the government bears the burden of pleading abuse of the writ by, "with clarity and particularity," noting petitioner's prior writ history and identifying the claims that appear for the first time. Respondents have not met this burden; they simply argue that this petition "raises claims that could have been raised in [the] first habeas petition." ECF No. 22 at 1. Respondents do not identify "with clarity and particularity" which claims are new that could have been raised in the first habeas petition. *Id.* at 2. Importantly, respondents do not identify the due process claims or the *Accardi* claim as claims that should have been brought earlier. *Id.* (stating that "arguments regarding DACA could have been raised in [prior case]."). Accordingly, I reject respondents' argument that the abuse of the

---

regulations we administer.").

[6] *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

writ doctrine bars my consideration of the amended petition.

Turning to the merits of the petition, respondents argue that all the claims "boil down to one simple argument: that [petitioner] should not be detained because he was granted DACA." ECF No. 22 at 2. Respondents argue that the court should reject this assertion. However, petitioner claims that his detention violates procedural due process, particularly in light of his DACA status at the time of detention. ECF No. 17 at 20-22.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

Petitioner came to the United States as a four-year-old; he was granted DACA status when he was approximately twenty years old.[7] ECF No. 17 at 4. He grew up in this country, attending school, working, and speaking English. *See id.* at 5. Other district courts have "overwhelmingly found" that a noncitizen with active deferred action status has a protected liberty interest under the Due Process Clause. *See Benitez-Umanzor v. Jackson Par. Corr. Ctr.*, No. 26-cv-0940, 2026 WL 948795, at *2 (W.D. La. Apr. 8, 2026) (collecting cases)*; see also Fugon v. Chestnutt*, No. 1:26-cv-1841-DC-AC, 2026 WL 878616, at *6 (E.D. Cal. Mar. 31, 2026) (finding that the petitioner "demonstrated a likelihood of success on the merits of his claim that his detention without process violated his property interest in the deferred action he is entitled to by his Bona

[7] The government established the DACA program in 2012. *Dept. of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 8 (2020) ("*Regents*"). The program "applies to childhood arrivals who were under age 31 in 2012; have continuously resided in the United States since 2007; are current students, have completed high school, or are honorably discharged veterans; have not been convicted of any serious crimes; and do not threaten national security or public safety." *Id.* at 10. DACA does not constitute "a passive non-enforcement policy; it create[s] a program for conferring affirmative relief." *Id.* at 18; *see also Juarez v. Noem*, No. 2:26-cv-0801-DC-CKD, 2026 WL 799976, at *4 (E.D. Cal. Mar. 23, 2026). Deferred action is a "form of prosecutorial discretion whereby the Department of Homeland Security declines to pursue the removal of a person unlawfully present in the United States." *Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 967 (9th Cir. 2017); *see also Dept. of State v. Muñoz*, 602 U.S. 899, 924 (Sotomayor, J., dissenting) (explaining that "DACA status entitles [recipients] to work and live in the country without the immediate threat of removal").

Fide Determination"); *Juarez v. Noem*, No. 2:26-cv-0801-DC-CKD, 2026 WL 799976, at *7 (E.D. Cal. Mar. 23, 2026) (finding that the petitioner "is likely to succeed on the merits of her claim that her removal from the United States violated her due process interest in her DACA status"). When ICE detained petitioner in May 2025, his DACA status was still active. ECF No. 17 at 4.

To grant petitioner DACA status, the government necessarily found that he was under 16 years old when he entered the United States, and that he had continuously resided in the United States for at least five years before January 1, 2010.[8] In adjudicating petitioner's DACA application, the government also necessarily found that petitioner had not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, or that he was not otherwise a threat to national security or public safety. *Id.*; *see also Arpaio v. Obama*, 797 F.3d 11, 17-18 (D.C. Cir. 2015) (holding that "DACA . . . appl[ies] to the portion of the population that [DHS] considers not threatening to public safety and that has not had any involvement, or only minimal and minor involvement, with the criminal justice system").

The post-hoc termination of petitioner's DACA in March 2026 status does not change the court's analysis of his protected liberty interest at the time of his ICE arrest in May 2025. "Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). This liberty interest was created at the time that the government granted petitioner DACA status. *See Reyes Servin v. Semaia*, No. 5:26-cv-2745-MAR, 2026 WL 1670852, at *3 (C.D. Cal. June 4, 2026) ("[O]nce Petitioner was granted deferred action, and permitted to remain free from detention, he acquired a liberty interest in remaining released from custody.").

DACA recipients come to the United States as children and "spend years establishing a life in the interior of the United States . . . ." *Gomez Vallecios v. Noem*, No. 25-cv-573-KC, 2025 WL 3853219, at *3 (W.D. Tex. Dec. 9, 2025) (holding that DACA recipient acquired protectable

[8] *See* DHS, *Deferred Action for Childhood Arrivals: Who Can Be Considered?* (Aug. 15, 2012), https://www.dhs.gov/archive/news/2012/08/15/deferred-action-childhood-arrivals-who-can-be-considered.

liberty interest). As a DACA recipient, petitioner has a "powerful interest . . . in his continued liberty." *Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) (considering liberty interest "powerful" where petitioner was living with family out of custody for two years). Accordingly, I find that, at the time of his detention, petitioner had a protected liberty interest.

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his freedom. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has a private interest in his continued release that developed over the decade between his DACA approval and his detention. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high. Prior to giving petitioner permission to live and work in the United States under DACA, respondents determined that he presented neither a danger to the community nor a risk of flight. *See supra* Note 8. Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's detention will not be

pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

Respondents offer no evidence or argument indicating that any procedural safeguards were employed prior to petitioner's detention; more generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id*. On the contrary, the fact that the government still maintains, even after this court's prior order in *G.B. I*, that petitioner is subject to mandatory detention indicates that it has not made sufficient efforts to prevent an erroneous deprivation of his liberty. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Respondents have not provided any information about the additional burden it would bear as a result of being required to provide a pre-deprivation bond hearing. *See* ECF No. 22.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's detention without a bond hearing violated his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release or, alternatively, a bond hearing. ECF No. 17 at 25. Respondents do not address the issue. ECF No. 22 at 3.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful

detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id*. at 128 (cleaned up).

Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

I do not find, and respondents do not argue, that there was any necessity of quick action, or that providing a pre-deprivation hearing was impractical. Although it appears that petitioner has been arrested in the United States, *see* ECF No. 16-1 at 4-8, he has no criminal convictions. ECF No. 17 at 3. Petitioner was arrested in May 2025 for driving under the influence, but charges remain pending. *Id.* Indeed, courts have found that a pre-deprivation hearing is still required where the petitioner is initially arrested by local law enforcement and then transferred to ICE custody. *See J. O. J.L. v. Blanche*, No. 1:26-cv-4142-DAD-JDP, 2026 WL 1745732, at *4 (E.D. Cal. June 17, 2026), *report and recommendation adopted*, 2026 WL 1832766, at *1 (E.D. Cal. June 25, 2026); *Osorto v. Warden of Mesa Verde Det. Facility*, No. 1:26-cv-2915-DJC-JDP, 2026 WL 1224248, at *4 (E.D. Cal. May 5, 2026), *report and recommendation adopted*, 2026 WL 1330554 (E.D. Cal. May 13, 2026)*; Adamchuk v. Casey*, No. 3:26-cv-1149-RBM-VET, 2026 WL 785532, at *1-2 (S.D. Cal. Mar. 20, 2026).

Petitioner has been in ICE custody since May 2025, approximately fifteen months. During that time, he has tried repeatedly to obtain the custody redetermination hearing mandated by 8 U.S.C. § 1226, but each time, the immigration court held that it lacked jurisdiction. *See* ECF No. 22-1. I found that petitioner was unlawfully detained under 8 U.S.C. § 1225. *See G.B. I*,

ECF No. 14. It required a habeas order from this court for the immigration court to hold a bond hearing as required by 8 U.S.C. § 1226(a). ECF No. 16-1. At that hearing, the immigration court placed the burden of proof on petitioner and denied bond. *Id.*

Due process, however, requires the government to prove danger or flight risk by clear and convincing evidence in these circumstances. *See Martinez v. Clark*, 124 F.4th 775, 780 (9th Cir. 2024); *Lopez v. Garland*, 631 F. Supp. 3d 870, 882 n.9 (collecting cases). Petitioner has not been provided a constitutionally adequate bond hearing. Accordingly, I find that the "typical remedy" of release is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing, and the government has failed to provide a prompt post-deprivation hearing that comports with due process. *See Munaf*, 553 U.S. at 693; *see also Lopez Alonza v. Warden*, No. 1:26-cv-3059-DJC-JDP, 2026 WL 2390826, at *5 (E.D. Cal. Aug. 17, 2026), *report and recommendation adopted*, 2026 WL 2446693 (E.D. Cal. Aug. 20, 2026). Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning him to the "status quo ante." *See Cardin Alvarez*, 2025 WL 2898389, at *21.

**Conclusion**

Accordingly, it is hereby ORDERED that respondents' motion to dismiss, ECF No. 7, is DENIED as moot in light of the filing of the first amended petition.

Further, it is hereby RECOMMENDED that:

1. The first amended petition for writ of habeas corpus, ECF No. 17, be GRANTED.

2. Respondents be ordered to immediately release petitioner (A-Number: 204-472-910) from their custody on the same conditions as prior to his detention. Respondents shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final

order of removal.

3. The Clerk of Court be directed to serve Golden State Annex Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: August 31, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE